IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| BOOTLER, LLC, | ) | |
| | ) | |
| Plaintiff, | ) | No. 24-cv-3660 |
| | ) | |
| v. | ) | Judge Jeffrey I. Cummings |
| | ) | |
| GOOGLE, LLC, | ) | |
| | ) | |
| Defendant. | ) | |

## MEMORANDUM OPINION AND ORDER

Plaintiff Bootler, LLC d/b/a FoodBoss, ("FoodBoss"), brings this lawsuit against defendant Google, LLC, ("Google"), under the patent laws of the United States, 35 U.S.C. §1, *et seq*., alleging that Google infringed two patents held by FoodBoss: namely, U.S. Patent Nos. 10,445,683 and 11,037,090 (together, the "Asserted Patents"). At a high level, the Asserted Patents relate to the creation of a database of restaurant information related to food delivery services. FoodBoss alleges that Google infringed on the Asserted Patents through Google Food, which allows consumers to search menus and order food delivery. FoodBoss further alleges that Google violated Section 4 of the Clayton Act and Sections 1 and 2 of the Sherman Act by monopolization, attempted monopolization, monopoly leveraging, and restraining trade. Finally, FoodBoss asserts that Google violated the Illinois Antitrust Act, 740 ILCS 10/1, *et seq*.

Google has moved to dismiss FoodBoss's claims pursuant to Federal Rule of Civil Procedure 12(b)(6), (Dckt. #27). In particular, Google asserts that the Asserted Patents are invalid pursuant to 35 U.S.C. §101 because they are based on abstract ideas and lack an inventive concept, which is required to make them patent-eligible. Google further asserts that FoodBoss's monopolization and antitrust claims should be dismissed for multiple reasons,

including because FoodBoss has failed to allege an antitrust injury. For the reasons set forth below, the Court grants Google's motion to dismiss.

I. THE ALLEGATIONS OF THE COMPLAINT

A. The Parties.

Plaintiff, FoodBoss, is a company operating in the "area of online food and/or beverage delivery services." (Dckt. #1 ¶12). Defendant, Google, through Google Food, offers services that involve "searching" and "ordering" food from "restaurants and/or delivery services." (*Id.* ¶17).

B. FoodBoss's Patent Claims.

The '683 Patent and the '090 Patent were issued on October 15, 2019 and June 15, 2021, respectively. (*Id.* ¶11). FoodBoss owns, by assignment, the entire right, title, and interest in the Asserted Patents. (*Id.*). The Asserted Patents are both titled "Methods, Systems and Program Products for Aggregating and Presenting Service Data from Multiple Sources Over a Network," (*id.*), and they share similar descriptions and claims, (*compare* Dckt. #1-1 with #1-2).

According to the Asserted Patents, "it is well known" that a customer can order food from a restaurant for in-person delivery, via a website or interactive application ("app"). (Dckt. ##1-1 at 20, 1-2 at 20). The Asserted Patents recognize that "[m]ore recently, food and beverage delivery services [*e.g.*, Grubhub and UberEats] have been introduced separately from the restaurants" which allow consumers to "select food and beverage items from among several restaurants . . ." (*Id.*) But, as the Asserted Patents explain, these food delivery services "do not all offer delivery from the same restaurants" and "different delivery services may charge widely varying prices for their items" which leads to discrepancies in how much it would cost a

2

consumer to have the same menu item(s) delivered from the same restaurant, based on which delivery service they use.  (Dckt. ##1-1 at 20–21, 1-2 at 20–21).

The Asserted Patents are designed to solve these inconveniences by allowing consumers to "search and compare aggregated restaurants and some or all of the menu items from multiple service sources."  (Dckt. ##1-1 at 21, 1-2 at 21).  In other words, the patented system allows consumers to compare menu offerings and prices between Grubhub, UberEats, and other delivery services, without visiting each delivery service separately "to obtain an optimal deal for ordering" from a selected restaurant.  (*Id.*).  To achieve this outcome, the Asserted Patents are directed at a computer-implemented method whereby "source data" (*e.g.*, menu items and prices) is acquired from multiple delivery services in varying formats, mapped to a "predetermined data format," linked (in its new formatted form) based on "identifier data" to associate common restaurants and menu items, and then combined into a new data set, referred to as the "master data set."  (*See generally* Dckt. ##1-1 and 1-2).  That information is then imported into a "searchable aggregated data structure."  (Dckt. ##1-1 at 31, 1-2 at 31).

C.      **Google's Alleged Infringement of the Asserted Patents.**

Google Food allows consumers to search menus for delivery from its member restaurants in a given location, including by common menu item.  (Dckt. #1 ¶19).  A consumer can access a particular restaurant menu and order delivery directly through Google Food.  (*Id.* ¶21).  According to FoodBoss, Google infringes on the Asserted Patents because Google Food is a "computer-implemented method for providing a searchable aggregated data structure for a networked application."  (*Id.* ¶22).

3

## II. LEGAL STANDARD

To survive a Rule 12(b)(6) motion to dismiss, the complaint must "state a claim to relief that is plausible on its face" for each count at issue. *Bell. Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A claim is plausible when the plaintiff "pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). When considering a motion to dismiss, the Court construes "the complaint in the light most favorable to the [non-moving party] accepting as true all well-pleaded facts and drawing reasonable inferences in [the non-moving party's] favor." *Yeftich v. Navistar, Inc.*, 722 F.3d 911, 915 (7th Cir. 2013). However, the Court "need not accept as true statements of law or unsupported conclusory factual allegations." *Id*. Furthermore, the Court is "not required . . . to ignore any facts alleged in the complaint that undermine the plaintiff's claim." *Arazie v. Mullane*, 2 F.3d 1456, 1465 (7th Cir. 1993).

## III. ANALYSIS

### A. FoodBoss Has Failed to Successfully Allege its Patent Infringement Claims.

Patents issued by the Patent and Trademark Office ("PTO") are presumed valid. 35 U.S.C. §282. Therefore, the "burden of establishing invalidity of a patent or any claim thereof shall rest on the party asserting such invalidity." *Id*. While patent eligibility under 35 U.S.C. §101 is an issue of law, the associated inquiry "may contain underlying issues of fact." *Berkheimer v. HP Inc.*, 881 F.3d 1360, 1365 (Fed. Cir. 2018) (cleaned up). Nevertheless, a court may determine patent eligibility on a motion to dismiss when the factual allegations in the complaint, taken as true, allow the Court to resolve "the eligibility question as a matter of law." *Aatrix Software, Inc. v. Green Shades Software, Inc.*, 882 F.3d 1121, 1125 (Fed. Cir. 2018). In deciding the issue, courts may consider the patent's claim language and its "character as a

whole," as well as the patent's written description. *CardioNet, LLC v. InfoBionic, Inc*, 955 F.3d 1358, 1368 (Fed. Cir. 2020).

Section 101 defines patentable subject matter as "any new and useful process, machine, manufacture, or composition of matter, or any new and useful improvement thereof." 35 U.S.C. §101. Section 101 does not allow for patents of every discovery and, to this point, the Supreme Court has held that "[l]aws of nature, natural phenomena, and abstract ideas are not patentable." *Alice Corp. Pty. Ltd. v. CLS Bank Int'l*, 573 U.S. 208, 216 (2014).

To guide courts in their analysis of patentable subject-matter, the Supreme Court has developed a two-part test for patentability, referred to as the "*Alice* test." *See Alice*, 573 U.S. at 217, (citing *Mayo Collaborative Servs. v. Prometheus Lab'ys, Inc.*, 566 U.S. 66, 76–77 (2012)). The *Alice* test instructs this Court to "first determine whether the claims at issue are directed to a patent-ineligible concept." *Alice*, 573 U.S. at 218. If the answer to this threshold question is "yes," this Court then moves to the second step to "consider the elements of each claim both individually and 'as an ordered combination' to determine whether the additional elements 'transform the nature of the claim' into a patent-eligible application." *Id.* at 221 (cleaned up). This second inquiry essentially asks whether the claim contains an "inventive concept sufficient to bring the abstract idea into the realm of patentability." *In re TLI Commc'ns. LLC Pat. Litig.*, 823 F.3d 607, 613 (Fed. Cir. 2016). If this Court concludes at the second step that the patent does not "contain an inventive concept sufficient to bring the abstract idea into the realm of patentability, then the invention is deemed ineligible for patent protection." *Cascades Branding Innovation LLC v. Aldi, Inc.*, 728 F.Supp.3d 917, 925 (N.D.Ill. 2024).

>  **1.     FoodBoss's Claims are Directed to a Patent-Ineligible Concept Under Step One of the *Alice* Test.**

Google argues that Claim 1 of the '683 Patent[1] is directed to "collecting, analyzing, and organizing information," which is a patent-ineligible, abstract idea. (Dckt. #27-1 at 8). The Court agrees.

Again, step one of the *Alice* test requires the Court to determine whether Claim 1 of the '683 Patent is "directed to one of those patent-ineligible concepts," specifically whether it is directed to an abstract idea. *See Alice*, 573 U.S. at 217. There is no definitive rule on what constitutes an "abstract idea," but the Supreme Court and Federal Circuit "have found it sufficient to compare the [patent] claims at issue to those claims already found to be directed to an abstract idea in previous cases." *Enfish, LLC v. Microsoft Corp.*, 822 F.3d 1327, 1334 (Fed. Cir. 2016).

Relevant here, with respect to computer-assisted processes, the Federal Circuit instructs courts to review whether, on one hand, the claims improve computer capabilities or whether, on the other hand, they target a "process that qualifies as an abstract idea for which computers are invoked merely as a tool." *Id.* at 1336 (cleaned up). Claims in the latter category which involve the mere collection, analysis, and outputting of data are directed to patent-ineligible subject matter. *See, e.g.*, *Int'l Bus. Machines Corp. v. Zillow Grp., Inc.*, 50 F.4th 1371, 1378 (Fed. Cir. 2022) ("We have repeatedly held claims directed to collection of information, comprehending the meaning of that collected information, and indication of the results, all on a generic computer network operating in its normal, expected manner to be abstract.") (cleaned up); *Customedia*

---

[1] For the purposes of patent eligibility, a court may "treat a claim as representative . . . if the patentee does not present any meaningful argument for the distinctive significance of any claim limitations not found in the representative claim." *Berkheimer*, 881 F.3d at 1365. Here, FoodBoss does not dispute Google's assertion that Claim 1 of the '683 Patent is representative of all of the asserted claims.

*Techs., LLC v. Dish Network Corp.*, 951 F.3d 1359, 1365 (Fed. Cir. 2020) ("it is not enough . . . to merely improve a[n] . . . abstract process by invoking a computer merely as a tool."); *BSG Tech LLC v. Buyseasons, Inc.*, 899 F.3d. 1281, 1286 (Fed. Cir. 2018) (explaining claims that did not focus on a "specific asserted improvement in computer capabilities" were abstract); *Elec. Power Grp., LLC v. Alstom S.A.*, 830 F.3d 1350, 1353–54 (Fed. Cir. 2016) (concluding claims focused on "collecting information, analyzing it, and displaying certain results of the collection and analysis" were abstract); *Content Extraction & Transmission LLC v. Wells Fargo Bank, Nat'l Ass'n*, 776 F.3d 1343, 1347 (Fed. Cir. 2014) ("data collection, recognition, and storage" were abstract ideas).

More specifically, the Federal Circuit is clear that forming a "new data set" or "data relationships" is an abstract concept. *See, e.g.*, *Digitech Image Technologies, LLC v. Electronics for Imaging, Inc.*, 758 F.3d 1344, 1351 (Fed. Cir. 2014). In *Digitech*, the claims were directed to a process of taking two data sets and combining them into a single data set. *Id.* In finding the claims invalid, the Federal Circuit explicitly noted that the claims "recite[d] an ineligible abstract process of gathering and combining data that does not require input from a physical device." *Id.*

Like the *Digitech* patent, the Asserted Patents here are directed to a process of taking multiple data sets (i.e., menu items and prices from various restaurants) and combining them into a single data set (i.e., the master data set), which can then be searched by customers. This is a patent-ineligible, abstract idea. *Id.*; *see also Trinity Info Media, LLC v. Covalent, Inc.*, 72 F.4th 1355, 1362–63 (Fed. Cir. 2023) ("[i]n the context of software-based inventions, *Alice/Mayo* step one 'often turns on whether the claims focus on the specific asserted improvement in computer capabilities or, instead, on a process that qualifies as an abstract idea

7

for which computers are invoked merely as a tool.'"), *quoting In re Killian*, 45 F.4th 1373, 1382 (Fed. Cir. 2022).

FoodBoss takes issue with Google's characterization of the abstract nature of the claims based on the Asserted Patents' use of a "linking" step. According to FoodBoss, this step involves using a computer processor to analyze delivery service and restaurant data to form, what FoodBoss describes as, a "wholly new data set made of all new data relationships." (Dckt. #33 at 11). This entails identifying "common menu items" from the collected data and combining that information into a "master menu." *Id.* at 10. It is this "linking" step, FoodBoss argues, that renders its claims non-abstract.

FoodBoss's position, however, is at odds with authority from the Federal Circuit, which has held that claims "directed to collection of information [and] comprehending the meaning of that collected information," including by "linking" and "providing for association of . . . data" are unpatentable. *In re Smith*, No. 2022-1310, 2022 WL 4112730, at *1–2 (Fed. Cir. Sept. 9, 2022). Indeed, the Federal Circuit has rejected the argument that generating a new "dynamic document" using data extracted from existing documents is patent-eligible. *See Intellectual Ventures I LLC v. Capital One Financial*, 850 F.3d 1332, 1339–41 (Fed. Cir. 2017).

Notwithstanding this authority, FoodBoss relies on two cases—*Enfish* and *Amdocs*—to argue that the claims of the Asserted Patents are not directed to an abstract idea based on the "linking" step. However, both decisions are inapposite. The claims in *Enfish* involved patents that improved how computers functioned—that is, they improved the way the computer stored and retrieved data in memory. 822 F.3d at 1339. The claimed "innovative logical model for a computer database" conferred "increased flexibility, faster search times, and smaller memory requirements." *Id.* at 1337. The *Enfish* court therefore found the claims to be non-abstract

8

because they were "directed to a specific improvement to computer functionality," rather than mere "generalized steps to be performed on a computer using conventional computer activity." *Id.* at 1338. Similarly, in *Amdocs (Israel) Ltd. v. Openet Telecom, Inc.*, the patent claimed an "arrange[ment of] components in a distributed architecture to achieve a technological solution" that "improve[d] the performance of the [computer] system itself." 841 F.3d 1288, 1301–02 (Fed. Cir. 2016).[2]

      Here, unlike in *Enfish* and *Amdocs*, FoodBoss has not shown how the claims are directo a specific improvement in computer functionality. Consequently, FoodBoss's reliance on the "linking" step, as described, to establish that its claims are patent-eligible is unavailing.

      The abstract nature of FoodBoss's claims is further apparent because they involve operations that a human could perform—namely separately visiting each delivery service's website or app to determine whether that delivery service offers the menu item the customer wishes to purchase and if so, the associated cost. As the Federal Circuit has explained, "a telltale sign of abstraction is when the claimed functions are mental processes that can be performed in the human mind or using a pencil and paper." *Trinity Info Media*, 72 F.4th at 1361–32 (cleaned up). FoodBoss argues that an individual is "incapable of filtering the sheer amount of food delivery service data that is stored online." (Dckt. #33 at 10). Even presuming this is true as a factual matter, this argument misses the mark as a matter of law. "[A] patent that automates 'pen and paper methodologies' to conserve human resources and minimize errors is a quintessential 'do it on a computer' patent directed to an abstract idea." *Int'l Bus. Machines Corp.*, 50 F.4th at

---

[2] Furthermore, in *Amdocs*, the Federal Circuit spent the majority of its analysis on *Alice* step two, noting without analysis that "even if [the court] were to agree that claim 1 is directed to an ineligible abstract idea under step one, the claim is eligible under step two because it contains a sufficient 'inventive concept.'" *Amdocs*, 841 F.3d at 1300.

9

1382; *see also Elec. Power Grp., LLC*, 830 F.3d at 1355 ("Merely requiring the selection and manipulation of information—to provide a 'humanly comprehensible' amount of information . . . by itself does not transform otherwise-abstract processes of information collection and analysis."). What's more, the Federal Circuit is clear that computer-based claims that merely "assist . . . in processing information more quickly," like the ones at issue here, are still directed to a patent-ineligible abstract idea because they do not "improve the functioning of the computer, make it operate more efficiently, or solve any technological problem." *Trading Techs. Int'l, Inc. v. IBG LLC*, 921 F.3d 1084, 1093 (Fed. Cir. 2019).

The Court therefore finds that the Asserted Patents are directed to an abstract idea or result rather than to a specific improvement to the way computers operate in creating that result. The Court thus proceeds to the second step of the *Alice* test.

### 2. FoodBoss's Claim Does Not Contain an "Inventive Concept" Sufficient to Bring it Into the Realm of Patentability Under Step Two of the *Alice* Test.

The Court's finding that the claims in the Asserted Patents are directed to an abstract idea does not necessarily make them patent-ineligible. At step two of the *Alice* framework, the Court must consider whether the claims "do significantly more than simply describe [the] abstract method." *Intellectual Ventures I*, 850 F.3d at 1341, *quoting Ultramercial, Inc. v. Hulu, LLC*, 772 F.3d 709, 715 (Fed. Cir. 2014). If the claims include "additional features" that add an "inventive concept," the claims are "eligible for patenting even if they are directed to an abstract idea." *Intellectual Ventures I*, 850 F.3d at 1341 (cleaned up). Any such "inventive concept must be evident in the claims." *RecogniCorp, LLC v. Nintendo Co.*, 855 F.3d 1322, 1327 (Fed. Cir. 2017). Put differently, process claims directed to an abstract idea are nevertheless patent-eligible if the claim elements, considered "both individually and 'as an ordered combination,'" provide

details about how to apply that abstract idea in a way that is not "well-understood, routine, [or] conventional." *Alice*, 573 U.S. at 217.

Google argues that FoodBoss has not pointed to anything inventive in the overall ordered combination of the claim limitations and instead focuses on the "new data set" derived from linking menu items to other collected information. This, according to Google, is just a restatement of the results of the abstract idea of collecting and analyzing information, which is not sufficient to demonstrate an inventive concept under step two of the *Alice* test.

In response, FoodBoss points to *Bascom Glob. Internet Servs., Inc. v. AT&T Mobility LLC*, 827 F.3d 1341 (Fed. Cir. 2016), where the court explained an inventive concept "can be found in the non-conventional and non-generic arrangement of known, conventional pieces." *Id.* at 1350. The *Bascom* court further found that patent claims—which covered internet filtering software that was more "dynamic and efficient" than existing software—passed step two of the *Alice* test because the inventive concept was directed to a specific technical feature that improved network functionality. *Id.*

Such characteristics, however, are not present here in the Asserted Patents. Indeed, FoodBoss has not pointed to any "additional features" that are "more than well-understood, routine, conventional activity." *Int'l Bus. Machines Corp.*, 50 F.4th at 1379 (cleaned up). In short: FoodBoss is using computers to compute. Accordingly, the Court finds this case distinguishable from *Bascom* and, further, that the Asserted Patents are not an inventive concept under step two. *See OANDA Corp. v. StoneX Grp., Inc.*, 717 F.Supp.3d 713, 726 (N.D.Ill. 2024), *appeal dismissed*, No. 2024-1579, 2024 WL 2815973 (Fed. Cir. June 3, 2024) (distinguishing *Bascom* where the claimed innovations failed to "take advantage of an existing

11

technological feature and use it in a different and inventive way from its original purpose.") (cleaned up).

Simply put: FoodBoss has not plausibly and specifically alleged that the Asserted Patents' claims are drawn to patent-eligible subject matter. They are therefore invalid. As such, Google's motion to dismiss FoodBoss's infringement claims is granted.[3]

### B. FoodBoss Has Failed to Successfully Allege an Antitrust Injury.

Google next argues that FoodBoss's antitrust and monopolization claims must be dismissed because FoodBoss has failed to plausibly allege the existence of: (1) an antitrust injury; (2) Google's monopoly power or a dangerous probability of achieving it in the relevant market; (3) unlawful predatory pricing; or (4) unlawful self-preferencing. Because the Court finds that FoodBoss fails to plausibly allege an antitrust injury, which is an essential element of each of its antitrust and monopolization claims, the Court agrees those claims must be dismissed and it does not reach Google's remaining arguments. *See Appraisers Coal. v. Appraisal Inst.*, No. 93 C 913, 1999 WL 89663, at *1 (N.D.Ill. Feb. 12, 1999) (explaining that "evidence of antitrust injury," is "an element of every antitrust claim (including ones made under the Illinois antitrust laws.") (cleaned up).[4]

FoodBoss asserts that Google violated antitrust laws because Google does not collect a fee from restaurants or food delivery services when users place an order for food delivery on

---

[3] Google further argues that the PTO erred when it granted the Asserted Patents, and that despite receiving the PTO's approval, the Asserted Patents are invalid. (Dckt. #27–1 at 10). Because the Court has otherwise found that the patents are invalid under the *Alice* test, it need not reach the parties' arguments on this issue.

[4] The Court's finding extends to all of FoodBoss's antitrust claims, including those alleging violations of Sections 3(2) and 3(3) of the Illinois Antitrust Act, because "[t]he Illinois Antitrust Act expressly requires harmonization with the federal laws," such that "if the federal claims are dismissed, the equivalent state claims should be dismissed." *Force Partners, LLC v. KSA Lighting & Controls, Inc.*, No. 19-cv-07776, 2022 WL 580808, at *18 (N.D.Ill. Feb. 25, 2022).

Google Food, which makes those businesses less willing to pay the "commissions" that FoodBoss charges on restaurant delivery orders to their client restaurants placed by consumers via FoodBoss's platform. (Dckt. #1 ¶110). Google argues that each of FoodBoss's antitrust claims should be dismissed because the complaint fails to allege an antitrust injury. The Court agrees.

Antitrust laws were enacted for "the protection of competition not competitors," thus it is not enough for an antitrust plaintiff to show that the injury suffered was causally linked to the defendant's behavior. *Brunswick Corp. v. Pueblo Bowl-O-Mat, Inc.*, 429 U.S. 477, 488 (1977) (cleaned up). Rather, a cognizable antitrust injury "must either reduce output or raise prices to consumers." *Chi. Studio Rental, Inc. v. Ill. Dep't of Commerce*, 940 F.3d 971, 978 (7th Cir. 2019).

FoodBoss first argues that it has alleged an antitrust injury because Google's conduct will, "reduce output (innovation)" in the comparative restaurant delivery search market. (Dckt. #27-1 at 13). But this argument fails because "a lack of innovation is not a cognizable antitrust injury." *VBR Tours, LLC v. Nat'l Railroad Passenger Corp.*, No. 14 CV 00804, 2015 WL 225328, at *5 (N.D.Ill. Jan. 15, 2015). Moreover, FoodBoss's reliance on *Walter Kidde Portable Equip., Inc. v. Universal Sec. Instruments, Inc.*, 669 F.Supp.2d 895, 900 (N.D.Ill. 2009), is misplaced. In that case, the court found that allegations that patent infringement litigation influenced a smoke alarm manufacturer's ability to compete in the market, specifically its ability to develop innovative products and price its products at the most efficient level, were sufficient to state a plausible antitrust injury. *Id.* By contrast, FoodBoss does not plausibly allege that the lack of commissions impacts its ability to innovate or price its products at the most efficient level.

Second, FoodBoss has not pleaded that Google's conduct "raise[s] prices to consumers." *Chi. Studio Rental*, 940 F.3d at 978. Nor does the complaint allege that Google previously engaged in conduct which raised prices to consumers. Instead, FoodBoss alleges that, at some point in the future, once its competitors have exited the market, Google will introduce commissions that exceed those currently charged by FoodBoss, which will "reduc[e] consumers ability to compare delivery pricing" and "encourage[e] the proliferation of junk fees," (Dckt. #1 ¶119). FoodBoss further alleges that "[w]ithout competitive pressure from FoodBoss[,] there [will be] no incentive for Google to reveal to its platform's users the estimated fees they would incur for each transaction." (*Id.* ¶122). These assertions of potential future conduct are speculative, "conclusory statements," which do not suffice to support FoodBoss's monopolization causes of action. *Iqbal*, 556 U.S. at 678; *see also Wertymer v. Walmart, Inc.*, 142 F.4th 491, 495 (7th Cir. 2025) ("Most importantly for our purposes, the complaint must go beyond mere speculation or conjecture and provide factual allegations that allow the court to draw a reasonable inference . . .").

What's more, the allegations in FoodBoss's own complaint undermine its claims. Although FoodBoss asserts that Google's conduct "injures consumers by reducing customers' ability to compare delivery pricing," (Dckt. #1 ¶119), the complaint avers that Google also offers a feature that permits consumers to compare prices on third-party delivery services, (*id.* ¶¶75, 79 (alleging that Google presents "a number of third-party delivery service provider options, with estimated fees" and "allow[s] consumers to directly compare the prices for various third-party delivery services in one [search results page]")). The Court is not required to ignore these allegations. *See Arazie*, 2 F.3d at 1465.

Thus, at best, FoodBoss has alleged an injury "to itself, not an anticompetitive injury to the market," and this is insufficient to withstand a motion to dismiss. *Chi. Studio Rental*, 940 F.3d at 978. Such injuries are not the type of injuries that the antitrust laws were intended to prevent. *See Serfecz v. Jewel Food Stores*, 67 F.3d 591, 597 (7th Cir. 1995) ("A private antitrust plaintiff . . . does not acquire standing merely by showing that he was injured by the defendant's conduct."); *U.S. Gypsum Co. v. Indiana Gas Co.*, 350 F.3d 623, 627 (7th Cir. 2003) ("The antitrust-injury doctrine was created to filter out complaints by competitors and others who may be hurt by productive efficiencies, higher output, and lower prices, all of which the antitrust laws are designed to encourage.").

In sum: because FoodBoss fails to plead a plausible theory of antitrust injury, its antitrust and monopolization claims must be dismissed under Rule 12(b)(6).

## CONCLUSION

For all the reasons stated above, the Court grants Google's motion to dismiss, (Dckt. #27). FoodBoss is granted until September 25, 2025 to file an amended complaint, to the extent that it can do so consistent with this Memorandum Opinion and Order and the dictates of Federal Rule of Civil Procedure 11. If FoodBoss does not timely file an amended complaint, the dismissal of this case will convert to a dismissal with prejudice with no further action.

**DATE:** September 4, 2025

**Jeffrey I. Cummings**
**United States District Court Judge**